Commonwealth of Pennsylvania, Petitioner, *v.* Washington Township, Fayette County; Jefferson Township, Fayette County; Municipal Authority of the Borough of Fayette City, Fayette County; and Municipal Authority of the Township of Washington, and the Elected Officials of Said Municipalities, Respondents.

Argued December 5, 1973, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Dennis J. Harnish,* Special Assistant Attorney General, for petitioner.

*William A. Tantlinger,* with him *Philip T. Warman,* for respondents.

OPINION BY JUDGE KRAMER, February 15, 1974:

This case was commenced by the filing of a petition intended to come within the original jurisdiction of the Court by the Commonwealth of Pennsylvania (Commonwealth) against Washington Township, Jefferson Township, Municipal Authority of the Borough of Fayette City, and the Municipal Authority of the Township of Washington, all located in Fayette County (hereinafter referred to as Respondents). In its petition, the Commonwealth seeks to enforce final orders of the Department of Environmental Resources (DER) requiring the Respondents to negotiate and enter into agreements for the planning, designing, financing, constructing and operation of a sewage facility for a watershed within the boundaries of the Respondents' respective territories. The petition alleges that the Respondents

either failed to appeal or withdrew appeals from the various orders of DER. The petition specifically states that it is filed pursuant to Section 210 of The Clean Streams Law, Act of June 22, 1937, P. L. 1987, art. II, §210, as amended, 35 P.S. §691.210, under which DER alleges authorization to seek the enforcement of orders issued pursuant to Section 203 of The Clean Streams Law, 35 P.S. §691.203.

On the date set for hearing on the petition, viz., June 18, 1973, the Municipal Authority of the Borough of Fayette City filed preliminary objections. At that hearing the Municipal Authority of Washington Township orally announced that it would file preliminary objections and did so on July 2, 1973. Although inarticulately drawn, these preliminary objections are similar and are in the nature of a demurrer in that they pray for a dismissal of the petition on the basis that the Commonwealth has instituted this suit improperly under Section 210 of The Clean Streams Law, 35 P.S. §691.210. Under this contention, it is argued that Section 210 is restricted, by the language of the statute, to enforcement of DER's orders through sanctions. The Respondents' reasoning is that any enforcement of orders issued under Section 203 of The Clean Streams Law, 35 P.S. 691.203, must be commenced under the procedural provisions of Pa. R. C. P. No. 1007, which provides for the commencing of an action only by a praecipe for a writ of summons, a complaint, or an agreement for an amicable action.

It is the Commonwealth's argument before this Court that even though the 1970 amendments[1] to Section 210 of The Clean Streams Law do not specifically spell out an enforcement procedure such as was attempted in this case, this Court should "overlook" any such deficiency in the interest of carrying out the legislative

---

[1] Act of July 31, 1970, P. L. 653.

intent of The Clean Streams Law, and further, should "overlook any formal defects in pleading" so as to provide for a speedy abatement of the sewage pollution problems in question.

Although the Commonwealth filed preliminary objections to the Municipal Authority of Washington Township's preliminary objections, based upon a late filing of the preliminary objections, we will dismiss the Commonwealth's preliminary objections for the reason that if the preliminary objections filed by the two authorities are sustained, the effect of such ruling will be that this Court does not have jurisdiction to entertain the petition as filed.

The Commonwealth would have us infer legislative intent in this case to mean that where the Legislature broadened the power of the regulatory agency, the Legislature must have intended to permit enforcement procedures not specifically set forth in the statute. To be sure, our Supreme Court in *Pennsylvania Crime Commission Petitions,* 446 Pa. 152, 285 A. 2d 494 (1971) (which affirmed this Court's opinion at 2 Pa. Commonwealth Ct. 650 (1971)), stated that the Commonwealth may institute a proceeding not in conformity with Pa. R. C. P. No. 1007 where the Legislature has specifically provided for a different method of procedure. We recently upheld the same principle in *Commonwealth v. Derry Township,* 10 Pa. Commonwealth Ct. 619, 314 A. 2d 868 (1973). However, in none of these cases has our Supreme Court, or this Court, said that we can infer a procedure not specifically provided by statute. After the 1970 amendment, Section 210 of The Clean Streams Law (35 P.S. §691.210) reads as follows: "It shall be the duty of the corporate authorities of a municipality upon whom an order is issued pursuant to section 203 of this act to proceed diligently in compliance with such order. If the corporate authorities fail to proceed diligently, or if the municipality fails to comply with

the order within the specified time, the corporate authorities shall be guilty of contempt and shall be punished by the court in an appropriate manner and, for this purpose, application may be made by the Attorney General to the Court of Common Pleas of Dauphin County, until such time as the Commonwealth Court comes into existence and thereafter the Commonwealth Court instead of said Court of Common Pleas of Dauphin County, or to the court of common pleas of the county wherein the municipality is situated, which courts are hereby given jurisdiction." It seems clear to us that when the Legislature said "for this purpose, application may be made," the Legislature was specifically referring to punishment through sanctions for the failure of municipalities to proceed diligently to comply with the orders of DER. We find no authority, inferred or otherwise, from a reading of the language of Section 210 which would permit us to authorize the filing of a petition for the enforcement of orders issued under Section 203 (35 P.S. §691.203) in the manner attempted by DER in this case.

In passing, we must take note that DER has also requested in its prayer that upon failure of Respondents to meet the requested dates for compliance that this Court order Respondents to pay specific sums of money to the Pennsylvania Clean Water Fund through DER's appropriate Regional Sanitary Engineer's Office. Neither §210 nor §605 (35 P.S. §691.605) of The Clean Streams Law authorizes this Court to grant such a prayer.

Our ruling does not mean that DER has no means to seek enforcement of its orders. This Court recently approved the use of Section 210 contempt proceeding in the *Derry, supra,* case. We there agreed with DER's position in this case that we do not have authority to hold a person in contempt of an administrative body, even by way of what may be called a "statutory con-

tempt" as set forth in Section 210. We did determine, however, that after finding sufficient facts to support a "statutory contempt," sanctions could be levied for failing to comply with an order of this Court. *See Commonwealth ex rel. Chidsey v. Mallen,* 360 Pa. 606, 63 A. 2d 49 (1949); *Philadelphia County Election Board v. Rader,* 162 Pa. Superior Ct. 499, 58 A. 2d 187 (1948).[2]

Another method which may be utilized by DER to seek enforcement of its order may be found in Section 601 of The Clean Streams Law (35 P.S. §691.601) which provides: "(a) Any activity or condition declared by this act to be a nuisance, shall be abatable in the manner provided by law or equity for the abatement of public nuisances. In addition, suits to abate such nuisances or suits to restrain or prevent any violation of this act may be instituted in equity or at law in the name of the Commonwealth upon relation of the Attorney General. . . ." *See Commonwealth v. City of Jeannette,* 9 Pa. Commonwealth Ct. 306, 305 A. 2d 774 (1973).

In summary, we are saying that this Court has only that jurisdiction as provided by law. While it is obvious that the primary goal of a Section 210 contempt proceeding is to obtain compliance with DER orders, we cannot ignore the legal distinction between directly seeking the enforcement of an order and the alternative of requesting that sanctions be levied for the failure to comply with said order. Section 210 only provides for the latter. The Legislature has given this Court jurisdiction to enforce DER's orders either through a contempt proceeding under Section 210 of the statute, or by way of an enforcement proceeding under Section 601, in which latter case, the proceeding must be instituted under all of the provisions of the Pa. R. C. P. No. 1007. We therefore

---

[2] Overruled on other grounds in *Bell Appeal,* 396 Pa. 592, 152 A. 2d 731 (1959).

### ORDER

AND NOW, this 15th day of February, 1974, upon consideration of the pleadings filed, briefs presented, and argument, it is hereby ordered that the Preliminary Objections of the Commonwealth of Pennsylvania to the Preliminary Objections of the Municipal Authority of Washington Township are overruled; the Preliminary Objections of the Municipal Authority of Washington Township and the Municipal Authority of the Borough of Fayette City are sustained; and the Petition to Enforce Final Orders of the Department of Environmental Resources pursuant to Section 210 of The Clean Streams Law is dismissed without prejudice to the Commonwealth of Pennsylvania instituting a proper action for enforcement of its orders.