## Clayton v. Cawley

276

Before Eshelman, *P.J.*, and Schaeffer, *J.*

*Leon Ehrlich*, for plaintiffs.
*Francis M. Mulligan* and *Robert T. Miller*, for defendants.

SCHAEFFER, *J.*, January 31, 1979—This action is a class action brought by five citizens of Oley Township on behalf of all users or potential users of the sewer system of the Oley Township Municipal

Authority against the authority, the five members of the authority at the time of construction of the sewer system, and Spotts, Stevens and McCoy, Inc. (Spotts), an engineering firm. Plaintiffs allege in their complaint that the authority and Spotts entered into a written agreement under which Spotts was to design and supervise the construction of a sewer system treatment plant. With the aid of these engineerng services, the authority undertook the construction of such a system and it was in the course of the construction of this system that, according to plaintiffs' allegations, the authority and Spotts committed certain enumerated "wrongful and negligent" actions, with the result that the class of which plaintiffs are members has sustained damages and in the future will sustain damages in the form of sewer rates which have been, and will be, higher than would have been the case if defendants' wrongful and negligent actions had not occurred.

Since both past and future damages are claimed, the class of persons entitled to recover damages will include both past users subject to sewer rentals and future users so subject. The persons who comprise the class as to past damage need not be the same persons who will comprise the class as to future damage.

Upon the filing of this complaint, all of defendants made motions, and were granted leave, to take oral depositions of the named plaintiffs, limited to such matters as pertain to the propriety of bringing and maintaining this action as a class action. Said depositions having been taken, each of defendants filed preliminary objections to plaintiffs' complaint, and it is by reason of these preliminary objections that this case is before us at this time. For

purposes of this opinion and order, it is necessary to place these preliminary objections into one of three categories and to consider each category separately.

## I. OBJECTIONS TO THE PROPRIETY OF THE CLASS ACTION

Defendants have filed numerous preliminary objections in which they allege that the named plaintiffs may not properly maintain this action as a class action.

However, by stipulation the parties have agreed that the preliminary objections raising questions of fact with regard to, and challenging the propriety of, the maintenance of this action as a class action, should be dismissed with leave granted defendants to raise these matters by answer and new matter, in the event this action is not for other reasons dismissed or terminated. In accordance with this stipulation, we, therefore, dismiss all preliminary objections relating to the propriety of maintaining this action.

## II. PRELIMINARY OBJECTIONS OF THE AUTHORITY AND MEMBERS OF THE AUTHORITY

Apart from their objections to the maintenance of this action as a class action, the authority and the individual members of the authority have raised several preliminary objections to plaintiffs' complaint.

### A. Preliminary Objections in the Nature of a Demurrer and a Motion to Strike.

The authority and the members of the authority

in their preliminary objections nos. 6, 7 and 8 under their demurrer, and in their preliminary objection no. 14 in their motion to strike, contend that plaintiffs in their complaint have failed to show how the alleged negligent actions have caused their damages, and that because of this, they have failed to state a claim upon which relief can be granted, that the damages are improper, and that the relief requested is not available to plaintiffs. In ruling upon these objections, we must adhere to the basic principle that for purposes of a demurrer, the court must accept as true the well-pleaded facts of the complaint along with the fair and reasonable inferences therefrom: Philadelphia v. Penn Plastering Corp., 434 Pa. 122, 253 A. 2d 247 (1969).

In paragraph 6 of their complaint, plaintiffs allege that defendant members of the authority committed numerous acts of negligence in connection with the construction of the sewer system. In paragraph 8, they further allege that they "have been greatly damaged and will continue to be damaged by the aforesaid conduct of the defendants in that they will be obliged to pay higher rates for sewer use than otherwise would have been the case . . . " From these allegations, one can reasonably infer that the defendants' acts of negligence resulted in the construction of a sewer system and sewage treatment plant that is more costly than otherwise would have been the case, with the natural consequence that plaintiffs have sustained damages and will in the future sustain damages in the form of higher sewer rates. Therefore, we conclude that plaintiffs have alleged facts in their complaint which, along with the reasonable inferences from those facts, state a claim upon which relief can be granted.

Plaintiffs claim the damages sustained should *all* be paid to the authority and be used to reduce sewer rates.

In claiming damages in this manner, plaintiffs are seeking a type of Fluid Class Recovery. Two types of Fluid Class Recovery have been delineated in the law. In the first type, plaintiffs seek to have the damages suffered by the class as a whole determined, contemplate that many individual members of the class will be permitted to, and will, claim and prove their individual damages, and then seek to have the unclaimed balance applied to the benefit of the class as a whole. In the second type, after the damages for the class as a whole have been determined, all of the damages are applied to the benefit of the class as a whole and the individual members of the class cannot recover their individual losses.

Plaintiffs, in the case at bar, by asking that all of the damages be paid to the authority and be used to reduce sewer rates, are asking that the damages be paid to benefit the class as a whole, and make no provision for an individual member of the class to recover his or her actual loss. Therefore, plaintiffs in the case at bar seek the second type of Fluid Class Recovery.

Without determining at this time whether the first type of Fluid Class Recovery is permitted in Pennsylvania, we do determine that the second type is not.

As we have seen, plaintiffs allege that defendants' conduct has caused, and in the future will cause, plaintiffs and other members of the class a loss, i.e., the difference between the sewer rates which they have been, and in the future will be,

required to pay and the sewer rates they would have had to pay, and in the future would have to pay, were it not for defendants' conduct.

Therefore, two types of damages are claimed—past damages for losses sustained before verdict, and future damages for losses sustained after verdict. Past damages would properly be payable to persons who are members of the class as of the time of verdict, i.e., to persons who as of that time have paid, or then owe, the higher sewer rates for sewer service provided prior to verdict. Therefore, past damages must be paid to those persons who are members of the class as of that time. Each of such persons individually will have sustained a loss and such persons will not necessarily be the same individuals as those who will comprise the class after verdict. Any number of persons who are, or will become members of the class before verdict, after verdict may not be subject to sewer rentals, or will be subject to sewer rents on a different basis, because of death, removal from the authority's sewer service area, having become a different kind of, or a smaller or larger, user, or the like. As a result, after verdict such persons will not be members of the class, or will be members of the class to a different extent or on a different basis, and payment of all damages to the authority, so that its construction debts can be reduced, and its debt service and sewer rates lowered, will not benefit those persons who are at that time no longer members of the class, or who are members of the class on a different basis or to a different extent, or will benefit such persons in a manner unrelated to their loss.

Payment to the authority of all damages would deprive individuals who are members of the class

before verdict of their individual claims without due process of law: Eisen v. Carlisle & Jacquelin, 479 F. 2d 1005 (2d Cir. 1973), vacated on other grounds, 417 U.S. 156, 94 Supreme Ct. 2140, 40 L.Ed. 2d 732 (1974).

The same reasoning applies to that portion of future damages representing losses which will occur after verdict but before the verdict is paid.

On the other hand, that portion of future damages representing losses which will occur after payment of the verdict, when applied to reduce sewer rentals thereafter, will benefit persons who are members of the class after the time the verdict is paid fairly and proportionally. Therefore, payment of such portion of future damages can properly be paid to the authority for the purpose of enabling the authority to pay upon its construction debt and thereby lower its debt service costs and its sewer rentals.

To summarize, we hold that payment of all damages to the authority for the purpose of reducing sewer rates is improper.

Accordingly, plaintiffs' claim for damages as stated is improper and is stricken.

The authority and the individual members of the authority also, in their preliminay objection no. 9, demur to, and move to strike off, the complaint on the ground that plaintiffs have not alleged facts which, if proved, would entitle them to punitive damages. It is established law in Pennsylvania that in order to state a cause of action for punitive damages, the plaintiff must allege facts tending to prove, or from which one can reasonably infer, that the defendant committed his acts intentionally and with malice, or that he commited acts evidencing a design of violence, injury, or oppression to plaintiff, or that he committed acts which amount to wanton

and reckless conduct: Richette v. Pennsylvania Railroad, 410 Pa. 6, 187 A. 2d 910 (1963); Philadelphia Traction Co. v. Orbann, 119 Pa. 37, 12 Atl. 816 (1888); Lieberman v. Howard Johnson's Inc. (No. 1), 68 D. & C. 2d 129 (1973) (applying this principle in a class action). "Wanton" and "reckless" in this context mean such a gross indifference toward, and disregard of, plaintiffs' rights as to call for a monetary penalty.

In paragraph 6 of their complaint, plaintiffs set forth 11 allegations of "wrongful and negligent" conduct on the part of the individual members of the authority, alleging that members of the authority were guilty of ignorance, omitted to take action, or took affirmative, but negligent action. None of these allegations furnish a basis for finding that defendants acted with wantonness, recklessness, or with a design of violence or oppression. Therefore, we conclude that plaintiffs have failed to state a cause of action for punitive damages from the authority and the individual members of the authority.

These defendants' preliminary objections in the nature of a demurrer for failure to state a claim upon which relief can be granted is overruled. Plaintiffs' claim for damages as pleaded is stricken. Said defendants' preliminary objections in the nature of a demurrer as to plaintiffs' claim for punitive damages is granted and paragraph 9 of the plaintiffs' complaint is stricken.

### B. Preliminary Objections for Failure to Join Necessary Party

The authority and the members of the authority in their preliminary objections raising lack of ca-

pacity to sue and non-joinder of a necessary party, contend that because plaintiffs are bringing this action as owners of property in Oley Township, and because they hold their interest in that property as tenancies by the entireties with their spouses, they are required to join their spouses as additional plaintiffs in this action.

On June 30, 1977, the Supreme Court of Pennsylvania adopted a new set of class action rules—Pennsylvania Rules of Civil Procedure 1701-1716. In its order promulgating the new rules, the Supreme Court stated: "This Order is effective September 1, 1977." In Re: Order Rescinding Rules of Civil Procedure 2230 and Promulgating Rules 1701 through 1716, Inclusive, Governing Class Actions, 471 Pa. CIII (1977). On that date, plaintiffs had already filed their complaint in this action and had served it upon defendants, so that this action was clearly pending at that time. Neither the class action rules themselves nor the order promulgating them nor the comments of the Civil Procedural Rules Committee, however, contain any statement concerning the applicability of the new rules to actions pending on the effective date of the new rules.

It is settled law in Pennsylvania that a Rule of Civil Procedure does not apply in cases, such as the case at bar, pending at the time such rule became effective, unless the order promulgating the rule specifically so provides: Wenzel v. Morris Distributing Co., 439 Pa. 364, 266 A. 2d 662 (1970); Kilian v. Allegheny County Distributors, 409 Pa. 344, 185 A. 2d 517 (1962); Schechtman v. Beatty, 45 D. & C. 2d 388 (1968); 1 Goodrich-Amram 2d §52:1. The order promulgating class action rules, Rules 1701 et seq., does not so provide. Therefore,

the new class action rules do not apply to this action. On the other hand, the order promulgating Rules 1701 et seq. specifically rescinded Rule 2230 effective September 1, 1977, the only rule pertaining solely to class actions as of the time the case at bar was instituted. If the rescission of Rule 2230 wipes out that rule as though it never existed, then no class action rules at all apply to the present action. Such a result would be anomalous and would be contrary to Pa.R.C.P. 128(a) which provides: "(a) That the Supreme Court does not intend a result that is absurd, impossible of execution or unreasonable."

We, therefore, hold that Pa.R.C.P. 2230 remains in effect as far as this section is concerned and governs this case.

Rule 2227 of the Rules of Civil Procedure provides that if a plaintiff only has a joint interest in the subject matter of an action with another person, he must join such other person as a plaintiff in that action. However, Rule 2230 applicable to class actions states: "If persons constituting a class are so numerous as to make it impractical to join all as parties, *any one* or more of them who will adequately represent the interest of all may sue or be sued on behalf of all . . . " (Emphasis supplied.)

Rule 2227, therefore, to the extent it is inconsistent with Rule 2230, is inapplicable to this case. So long as the named plaintiffs are members of the class, they are proper parties to bring this action, and they need not join any additional parties. In this action, the named plaintiffs seek to represent a class composed of users or potential users of the sewer system of Oley Township Municipal Authority. Therefore, we conclude that they are proper

parties to bring this class action, and that the objection raised by the defendant is without merit.

## C. Preliminary Objections in the Nature of a Motion for a More Specific Pleading.

The authority and the members of the authority also raise preliminary objections in the nature of a motion for a more specific pleading as to causation and damages, being preliminary objections nos. 22 and 23. In ruling on a motion for a more specific pleading, the only question is "whether the complaint is sufficiently clear to enable the defendant to prepare his defense." Bentz v. Parmer, 61 Dauph. 376, 377 (1951). See Com. v. City of Jeannette, 9 Pa. Commonwealth Ct. 306, 308, 305 A. 2d 774, 776 (1973). Therefore, if the complaint does not adequately inform defendant of the issues he must meet, the court must sustain the motion for a more specific pleading: 2 Goodrich-Amram 2d §1017(b):9. But if defendant is attempting to secure more specific details of which he has at least as much knowledge as the plaintiff, the court should not require a more specific pleading: Local No. 163, International Union, etc. v. Watkins, 417 Pa. 120, 207 A. 2d 776 (1965); Childs v. Scanlon, 60 Lanc. 425 (1967).

As we have stated, from the allegations of plaintiffs' complaint defendants can reasonably infer that plaintiffs will attempt to prove that the alleged acts of negligence resulted in the construction of a sewer system that is more costly than otherwise would have been the case, with the natural consequence that plaintiffs sustained, and will sustain, damages in the form of higher sewer rates. However, the plaintiffs' complaint as to the authority member defendants and the authority is vague

and indefinite as to what the alleged acts of negligence are. Pennsylvania is a "fact pleading" jurisdiction and, unlike the Federal practice, requires more than mere notice.

A plaintiff need not, and should not, plead evidence,[1] but he must plead sufficient facts to adequately inform the defendant of the issues to be met.

Plaintiff has alleged in paragraph 6 of the complaint facts which allegedly make these defendants liable. Paragraph 6 reads as follows:

"6. The individual defendants, in performing their functions as members of the said Authority, in violation of their obligations to the Authority and to the plaintiff, acted in a wrongful and negligent manner, failing and neglecting to properly exercise their functions in the following manner:

"(a) that they did not comprehend and/or did not seek advice or information on the meaning and significance of the terms used, such as 'E.D.U.,' vital in the decision making;

"(b) that they (excluding defendants Cawley and Frankhouser) either were misinformed or did not comprehend the legal status of lagoons as an alternative method of sewage treatment;

"(c) that they accepted, without independent thought and consideration, the views of the engineers;

"(d) that they (excluding defendants Cawley and

---

1. The line of demarcation between what is "fact" and what is "evidence" is not always easy to find. As a general principle the "what" and "where" of a matter and the actor's intent or negligence generally can be said to be "fact," the "how," and "under what circumstance" can be said to be "evidence."

Frankhouser) adopted a program of sewage treatment without fully comprehending and considering the actual cost to the plaintiffs and the burden thereof;

"(e) that they (excluding defendants Cawley and Frankhouser) adopted a program of sewage treatment based upon conjecture, inference and projection, when factual material was available;

"(f) that they (excluding defendant Cawley) accepted and/or sought engineering services without any contract regarding the cost of same;

"(g) that they (excluding defendant Cawley) paid for engineering services without having prior thereto any contract regarding the services and without prior agreement as to charges;

"(h) that there was obvious lack of comprehension as to what was covered by the engineering contracts and the charges therefor;

"(i) that being informed of the failings of the corporate defendant, as hereinafter set out, the individual defendants failed, neglected and refused to take appropriate action against the corporate defendant;

"(j) that either on the basis of their own information and/or information and advice furnished to them, they pursued a policy of refusal to pay for taking of rights-of-way, whereby they were and did incur additional and unnecessary expense in condemnation proceedings.

"(k) that, in violation of its own rules and regulations and rate structure, entered into an agreement with the school district under terms not provided in said rules, regulations and rate structure."

6(a) is too vague because it refers to certain "terms used, such as 'E.D.U.' " but with the sole exception of "E.D.U.," does not state what terms

are referred to. 6(b) is insufficient because it does not set forth what the legal status of lagoons was, that lagoons were an accepted alternative method of sewage treatment, and that lagoons were not actually a part of, and used in, the authority's sewer system. 6(c) is too vague in that it fails to set forth what the view of the engineers were and the independent thought and consideration required of these defendants. 6(d) is adequate. 6(e) is vague in that it fails to set forth in even general terms the factual material available and the conjectures, inferences and projections which these defendants made in adopting the sewer treatment program. 6(f) and 6(g) are inadequate in that they fail to allege the cost of the engineering services provided was excessive and unreasonable. 6(h) is insufficient in that it fails to set forth what these defendants did not comprehend concerning the engineering contracts and the charges therefor. 6(i) is insufficient in that it fails to set forth what action was appropriate against the corporate defendant and that these defendants failed to take such action. 6(j) is insufficient in that it fails to set forth what policy of refusal these defendants pursued concerning payment for taking rights-of-way. 6(k) is inadequate in that it fails to set forth whether the agreement with the school district was in writing, and if so, plaintiffs failed to comply with Pa.R.C.P. 1019(h) with regard to such agreement.[2]

We sustain these defendants' preliminary ob-

---

2. Pa.R.C.P. 1019(h) provides: "A pleading shall state specifically whether any claim or defense set forth therein is based upon a writing. If so, the pleader shall attach a copy of the writing, or the material part thereof, but if the writing or copy is not accessible to him, it is sufficient so to state, together with the reason, and to set forth the substance of the writing."

jections nos. 21 and 22 for a more specific pleading as to causation.

These defendants in their preliminary objections also object to plaintiffs' failure to set forth a precise sum in money claimed as damages.

While Pa.R.C.P. 1019(f) requires the pleader to specifically state items of special damage, we agree with Judge Flood, particularly in a case of a type like the case at bar. Judge Flood in Moore v. Petroleum Heat and Power Co., Common Pleas No. 6 of Philadelphia County, Pa., No. 3893 June Term, 1955, said:

"Nowadays with our expanded discovery procedure, we should not delay the litigation by requiring amended pleadings when it is doubtful what is sought is fact or evidence. Rather we should remand defendant to discovery procedures when the specific items of special damage which plaintiff seeks to recover are pointed out in his pleadings even though these items are not themselves itemized." Goodrich-Amram 2d, sec. 1019(f)-2, n.84, p. 155 (1976 ed.).

We hold that plaintiffs in the case at bar have specifically stated their special damages, i.e., higher sewer rates, and it is not necessary for them to set forth the exact amount of the loss: Lieberman v. Howard Johnson's Inc., supra. This is particularly true where, as here, the loss is alleged to be a continuing one, increasing as time goes on. Therefore, we deny these defendants' motion for a more specific pleading as to damages.

The authority and the individual authority members in their preliminary objection no. 10 under demurrer raise the statute of limitations. This is not a case, such as a wrongful death action, where the

cause of action must be brought within a certain time period or it thereafter fails to exist. In such a situation the statute of limitations goes to the very existence of the right, is nonwaivable, and properly can be raised by preliminary objection: Pa.R.C.P. 1017(b)(4). Rather, this is a case where the statute of limitations is an affirmative defense. It must, therefore, be raised by answer with new matter: Pa.R.C.P. 1030. These defendants' preliminary objection no. 10 is dismissed.

### III. PRELIMINARY OBJECTIONS OF SPOTTS, STEVENS AND McCOY, INC.

In its preliminary objection no. 8 under its motion to strike, Spotts moves to strike off the complaint, contending that since plaintiffs are attempting to state a cause of action against it for breach of contract, they are required to bring their action in assumpsit rather than trespass, and thus they have not used a proper caption for their complaint. In its preliminary objection no. 3 under its motion to strike, and no. 1 under its demurrer, Spotts contends that since plaintiffs are neither in privity of contract with Spotts nor are they third party beneficiaries of the contract between the authority and Spotts, they can have no cause of action for breach of contract against Spotts.

It has been held in Pennsylvania, however, that when an engineer enters into a contract under which he undertakes to perform engineering services, he has a duty at common law to exercise that degree of skill and care in performing those services that the ordinary and reasonable members of the engineering profession would exercise in the same circumstances: Bloomsburg Mills, Inc. v. Sordoni

Construction Co., Inc., 401 Pa. 358, 164 A. 2d 201 (1960); Printed Terry Finishing Co. v. City of Lebanon, 247 Pa. Superior Ct. 277, 372 A. 2d 460 (1977). In paragraph 7 of their complaint, plaintiffs do not allege that Spotts breached any of the terms of its agreement with the authority. Rather, read in light of the engineer's common law duty, the plaintiffs are alleging that in the course of the performance of its duties under the agreement, Spotts committed certain acts which breached its duty to exercise ordinary skill and care. Therefore, we conclude that plaintiffs are bringing this action as against Spotts, not for breach of contract, but for malpractice as engineers, and it is proper, therefore, for them to bring this action in trespass.

Spotts, in its preliminary objection no. 7 under its motion to strike, and in its preliminary objection no. 4 under its demurrer, argues that the complaint fails to state a cause of action against it. The question raised here is whether Spotts owed this common law duty to plaintiffs, the persons obligated to pay sewer rentals to the Oley Township Municipal Authority.

In this respect, Printed Terry Finishing Co. v. City of Lebanon, supra, is substantially on all fours with the present case. In Printed Terry, an owner of property in the City of Lebanon brought an action against the city and an engineering firm, alleging that the engineer had been negligent in conducting an analysis and evaluation of the city's water system. In defining the scope of the engineer's duty to exercise skill and care, the Superior Court referred to Doyle v. South Pittsburgh Water Co., 414 Pa. 199, 199 A. 2d 875 (1964), in which the Supreme Court held that when a party to a contract assumes a duty of performance, and a reasonable person

should foresee that his failure to perform that duty with skill and care will cause injury or damages to a third party in plaintiff's position, the contracting party has a duty to exercise skill and care as to that plaintiff. In Printed Terry Finishing Co. v. City of Lebanon, supra., at 290, the Superior Court held that this same standard is applicable to an engineer and its performance of engineering services, and that in that case, the engineer did owe a duty to exercise skill and care as to the property owner.

Applying this principle in the present case, we conclude as well that Spotts should reasonably have foreseen that a breach of any of its duties could cause the construction of a more costly sewer system and hence could cause users of that sewer system to be required to pay higher sewer rates. Therefore, we hold that Spotts did have a duty to exercise skill and care in the performance of its engineering services as to plaintiffs, and that plaintiffs have stated a cause of action against Spotts for malpractice as engineers.

Spotts in its preliminary objection no. 2 under its motion to strike, alleges that certain allegations in paragraph 7 of plaintiffs' complaint contain impertinent matter. However, given our conclusion that plaintiffs are bringing their action against Spotts for malpractice as engineers, it is obvious that the allegations in question are all highly relevant to the establishment of defendant's negligence in the performance of its engineering services. Therefore, we dismiss this preliminary objection as well.

Spotts, in its preliminary objections raising the defense of nonjoinder of a necessary party, has raised the same issues as raised by the other defendants in their preliminary objections to the same effect. For the reasons already stated, we

dismiss these objections. Spotts, in addition, by its preliminary objection no. 6 in its motion to strike, attacks plaintiffs' claim for punitive damages on the ground that plaintiffs have not alleged facts which, if proved, entitle them to punitive damages. For the same reasons stated before, we sustain this preliminary objection and strike off paragraph 9 of the complaint.

Spotts also raises the statute of limitations in its preliminary objection no. 4 under its motion to strike, and no. 2 under its demurrer. For the same reasons stated before, we dismiss these preliminary objections.

Finally, Spotts in its preliminary objections nos. 1 and 2, moves for a more specific pleading. In paragraph 7 of the complaint, the plaintiffs set forth the following allegations against the defendant:

"7. The corporate defendant, in performing its functions, in violation of its professional obligations to the Authority and to the plaintiffs, acted in a negligent manner, failing and neglecting to properly exercise its functions in the following manner:

"(a) that the corporate defendant did not properly prepare for meetings with the members of the Authority in that, with one exception: that of rate structure, no agenda or submission of material—some highly technical—was made to members of the Authority prior to meetings, at which time decisions were obliged to be made;

"(b) that records, such as house count allegedly made and original plans were not kept;

"(c) that the corporate defendant did not properly advise, explain or educate members of the Authority in matters the said members—defendants here—were obliged to act upon, such as the full

import of the alternative options available for the installation of sewage treatment facilities;

"(d) that the corporate defendant kept on using EDU's and estimates as the basis for its conduct and advice, when factual data—namely water consumption figures—had always been available.

"(e) that the services of the corporate defendant were not clearly defined and were performed prior to any clear understanding or contract having been concluded.

"(f) that the charges for the services of the corporate defendant were not necessarily related to the value of the services performed;

"(g) that the corporate defendant, not only performing purely engineering functions, but financial functions as well, failed to properly advise on and to offer complete information and data regarding the financial impact on the community in arriving and recommending the projects;

"(h) that the corporate defendant's figures in its reports and projections were confusing and misleading;

"(i) that the corporate defendant sent to meetings of the Authority to advise and deal with the members thereof, individual defendants herein, on engineering matters, one who was not a registered engineer;

"(j) that the corporate defendant did not fully and adequately explain the implication of the adverse taking and the costs realistically attendant thereon."

7(a) is vague and inadequate in that it fails to set forth what agenda or material should have been submitted to the authority members prior to meetings. 7(b) is insufficient in that it fails to set forth

what records Spotts was required to keep and what records Spotts did not keep. 7(c) is inadequate in that it fails to set forth what matters the authority members were obliged to act upon and what Spotts was required to do to "properly advise, explain and educate" the authority members. 7(d) is adequate. 7(e) is insufficient in that it fails to allege that Spotts' services were not required or were inadequate for the sewer project. 7(f) is adequate. 7(g) is vague in that it fails to set forth the advice given and the incomplete information and data offered. 7(h) is insufficient in that it fails to set forth the figures in Spotts' reports and projections which were confusing and misleading. 7(i) is adequate. 7(j) is insufficient in that it does not set forth what Spotts should have explained concerning adverse takings and what it did not explain.

For these reasons, we sustain Spotts' preliminary objections nos. 1 and 2 under its motion for a more specific pleading.[3]

Accordingly, we enter the following

## ORDER

And now, January 31, 1979, preliminary objections nos. 1, 2, 3, 4, 5, 6, 7, 10 and 11 under the

---

3. We note that Spotts in filing its preliminary objections numbered them 1, 2, 3, 4, 5, 6, 7 and 8 under Motion to Strike Off Complaint; 1, 2, 3 and 4 under Petition Raising Defense of Nonjoinder of a Necessary Party; 1, 2 and 3 under Petition Raising Lack of Capacity to Sue, and so forth. This violates Pa.R.C.P. 1022 which provides that: "Every pleading shall be divided into paragraphs numbered consecutively . . . " Thus, the paragraphs under Petition Raising Defense of Nonjoinder of a Necessary Party should have been numbered 9, 10, 11 and 12; the paragraphs under Petition Raising Lack of Capacity to Sue should have been numbered 13, 14 and 15, and so forth.

demurrer-class action averments, filed by defendants Thomas Cawley, James Dautrich, John Frankhouser, Harold Herbein and Amandus Reichert, individually, and as members of the Oley Township Municipal Authority, and by the Oley Township Municipal Authority, are dismissed; preliminary objections nos. 12, 13 and 15 under motion to strike, filed by said defendants, are dismissed; that portion of preliminary objection no. 14 under motion to strike, filed by said defendants to the extent it incorporates therein preliminary objections nos. 1, 2, 3, 4, 5 and 11 under the demurrer-class action averments, filed by said defendants, is dismissed; preliminary objections nos. 16, 17, 18, 19, 20 and 21 under petition raising lack of capacity to sue, filed by said defendants, are dismissed; preliminary objections nos. 8 and 9 under demurrer-class action averments, filed by said defendants, are sustained; that portion of preliminary objection no. 14 under motion to strike, filed by said defendants, as it incorporates therein preliminary objections nos. 8 and 9 under demurrer-class action averments, is sustained; preliminary objections nos. 22 and 23 under request for more specific pleading, filed by said defendants, are sustained; preliminary objections nos. 1, 2, 3, 4, 5, 7 and 8 under motion to strike, filed by defendant Spotts, Stevens and McCoy, Inc., are dismissed; preliminary objections nos. 1, 2, 3 and 4 under petition raising nonjoinder of a necessary party, filed by said defendant, are dismissed; preliminary objections nos. 1, 2 and 3 under petition raising lack of capacity to sue, filed by said defendant, are dismissed; preliminary objections nos. 1, 2, 3 and 4 under demurrer, filed by said defendant, are dismissed; preliminary objection no. 6 under motion to strike, filed by said defendant, is sustained; pre-

liminary objections nos. 1 and 2 under motion for more specific pleading, filed by said defendant, are sustained; paragraph 9 of the plaintiffs' complaint is stricken; and plaintiffs' claim for damages as pleaded is stricken.

Plaintiffs are hereby granted 30 days after the date this order is served upon them to file an amended complaint.